IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HAWKE CAPITAL PARTNERS, L.P., ET AL.,

    Plaintiffs,

    v.

AEROMED SERVICES CORPORATION,

    Defendant.

**Civil No. 12-1247 (SEC)**

**OPINION AND ORDER**

    Before the Court are the plaintiffs' unopposed motions for default judgment against the defendant, Dockets # 89 & 93, and an unanswered show-cause order why the defendant's counterclaim should not be dismissed for want of prosecution and for noncompliance with court orders. Docket # 94. After reviewing the filings and the applicable law, the plaintiffs' motions are **GRANTED**, and the defendant's counterclaim is **DISMISSED**.

**Procedural Background and Material Factual Findings**[1]

    The plaintiffs, four state-side corporations, bring this breach-of-contract suit against the Aeromed Services Corporation in connection with the rental, operation, and maintenance of an air ambulance. Docket # 1. Invoking diversity (Aeromed is from Puerto Rico), the plaintiffs filed this complaint in April 2012, seeking to collect $548,654.72, "plus all costs, expenses, accrued interest and attorney's fees." Id., p. 6; see also Docket # 99-1.

---

[1] When, as here, a district court considers imposing a default judgment, it must make sufficient "material factual findings" in order to establish "which discovery violations . . . [are] the basis of its ultimate sanction." Companion Health Services, Inc. v. Kurtz, 675 F.3d 75, 83 (1st Cir. 2012). The same holds for dismissal with prejudice. See Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976) (district court must consider full record in deciding whether to dismiss for failure to comply with discovery orders). The material factual findings are rehearsed below.

**CIVIL NO. 12-1247 (SEC)**                                                                 Page 2

After a show-cause order was issued for Aeromed's noncompliance with the pleadings deadline, Docket # 13, Aeromed answered and counterclaimed, asserting essentially that the plaintiffs' withdrawal of the air ambulance caused Aeromed's nonpayment. Docket # 16. On May 14, 2013, after several procedural nuances — including the parties' early but unsuccessful attempt at mediating their claims, Dockets # 36, 37 — a conference was held, during which all agreed that

> [a] . . . consent judgment . . . appeared to be the most cost-efficient way to end this litigation. The Court noted (and the defendant's counsel acknowledged), however, that the plaintiffs have to corroborate the defendant's financial situation. The Court thus gave the plaintiffs [ten] days to amend their interrogatories to that effect; the defendant has 30 days to answer them. In that same time frame, the defendant shall provide the plaintiffs will a full financial disclosure, including its last financial statement.
> . . .
> Thereafter, the parties shall meet to prepare a joint motion for entry of consent judgment. In order for the parties to focus solely on settlement (and thus avoid further unnecessary expenses) all the case management deadlines are set aside. . . .The parties have until July 31, 2013 to file a joint motion for entry of consent judgment. Docket # 52, p. 1 (typeface omitted).

As it happened, on May 30, the plaintiffs furnished Aeromed with revised set of interrogatories and request for production. Docket # 53; see Fed. R. Civ. P. 33, 34. Yet to date (almost a year later), that discovery remains outstanding.

The July 31, 2013 deadline to file the joint motion for entry of consent judgment came and went. Instead, the plaintiffs informed that they could not "agree to a final settlement of all claims and file a joint motion requesting a consent judgment, as [Aeromed] has no[t] yet filed any response to the revised and amended First Set of Interrogatories and Request for Production of Documents." Docket # 55, p. 2. The "[financial] documents and information requested," the plaintiffs further explained, "will enable [them] to agree to a settlement." Id. Aeromed was then given until August 9 "to answer the outstanding discovery . . . and file a notice of compliance to that effect." Docket # 56. Aeromed then requested (and was given) an extension until August 19, Docket # 57, 68. But it flouted its self-imposed deadline.

The Court then directed Aeromed to show cause why sanctions should not be imposed for violating that order, Docket # 59, and Aeromed showed cause. Citing personal reasons, Aeromed's counsel apologized for flouting the order and requested "a final extension of time to expire on Friday, September 13, 2013, to . . . answer[ ] [the] pending discovery requests." Docket # 61, p. 2. That extension, the Court stressed when it granted its latest request, was Aeromed's "final chance to make things right and comply" with its discovery obligations. Docket # 62. Aeromed again transgressed that order, however. And instead — three days past its second self-imposed "final" extension — it requested "two . . . more days, until September 18, 2013 to serve the answers to plaintiff's counsel." Docket # 65, p. 2. The Court granted this request, though it made clear that "[n]o further extensions will be granted." Docket # 66.

Shockingly, Aeromed disregarded that order, too, so on October 15, another show-cause order ensued. And because Aeromed never showed cause, on November 5, 2013, Aeromed was admonished "for its repeated failures to comply with court orders." Docket # 71 (citing Dockets # 13, 47, 59). "Failure to comply with future court orders," the order warned, "will entail harsher sanctions, including an entry of default judgment." Id. In the interim, the Court scheduled a status conference, Docket # 70, and gave Aeromed until November 14 to comply with "the orders regarding the outstanding discovery, see Dockets # 56, 58, 59, 62, 66." Docket # 73. Aeromed did not comply with that order either. And on November 15, another show-cause order followed: "The defendant shall show cause why a default judgment should not be entered against it for its repeated failures to comply with court orders." Docket # 74 (citing caselaw on this point; internal quotation marks omitted). (For Aeromed's response, see note 4 below.)

In January 2014, the status conference was held, during which the parties reiterated their "commitment to file a joint motion for entry of consent judgment." Docket # 83, p. 1. Noting that Aeromed had disregarded "numerous orders requiring production of the outstanding discovery, which the plaintiffs reasonably had requested in order to go forward with the settlement," the

Court inquired Aeromed's counsel about his client's serial noncompliance with court orders. He responded that he had "produced some of the discovery" and assured that the "remainder would be produced tomorrow." Id. The Court, "having resolved the problem" (or so it appeared), "gave the parties until February 20, 2014 to file the joint motion for entry of consent judgment and finally put an end to this litigation." Id. Aeromed's latest promise meant nothing, unfortunately, as it has yet to comply with the outstanding discovery. Docket # 86, p. 1; see also Docket # 85. This latest transgression prompted another show-cause order. Docket # 84. And, for a second time, Aeromed failed to show cause.

On March 3, the Court, describing Aeromed's conduct as "beyond the pale," imposed a $500 sanction on Aeromed for its "blatant and repeated disregard of court orders. See Docket # 74 (collecting instances of noncompliances with orders)." Docket # 86, p. 1. Aeromed, who was again forewarned that "failure to comply with this order will result in an entry of default judgment," was nonetheless given "one last chance, until March 14, 2014, to comply with the outstanding discovery and file joint motion for entry of consent judgment." Id., pp. 1-2.

After Aeromed ignored that order as well, the plaintiffs' patience ran its toll: They filed the two pending motions for default judgment. Dockets # 89, 93. For its part, the Court ordered Aeromed to "show cause why its counterclaim should not be dismissed with prejudice for lack of prosecution and for its repeated failures to comply with court orders." Docket # 94 (quoting Docket # 74; quoting in turn Docket # 71) (internal quotation marks omitted). To date, Aeromed has neither opposed the plaintiffs' motions for default judgment nor complied with that show-cause order. And the record is barren of any proof that Aeromed complied with its discovery obligations.

**Standard of Review**

Federal Rule of Civil Procedure 37(b) equips courts with a "veritable arsenal of sanctions," Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44 (1st Cir. 2007), for noncompliance with court directives. Pertinently, a default judgment may be rendered under

Rule 37(b)(2)(A)(vii) and pursuant to a federal court's inherent power to manage its affairs. Brockton Savings Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11-12 (1st Cir.1985); see also Fed. R. Civ. P. 16(f)(1)(C) (a district court may issue, on its own accord, "any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order.").

A court's inherent power and Federal Rule of Civil Procedure 41(b) also authorize dismissal "for want of prosecution or disregard of judicial orders," Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 4 (1st Cir. 2002), and "where a party's conduct egregiously abuses" the judicial process, R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11, 20 (1st Cir. 1991); Vázquez-Rijos v. Anhang, 654 F.3d 122, 127 n. 12 (1st Cir. 2011). This makes perfect sense, as the "[e]ffective administration of justice requires that trial courts possess the capability to manage their own affairs." Chamorro, 304 F.3d at 4 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)).

Now, the First Circuit has described default judgment against a disobedient party as a "drastic sanction," see, e.g., Crispin-Taveras v. Municipality of Carolina, 647 F.3d 1, 7 (1st Cir. 2011) (quoting Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 51 (1st Cir. 2009)). But it has also made clear that "its entry 'provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice.'" Companion Health Services, Inc. v. Kurtz, 675 F.3d 75, 84 (1st Cir. 2012) (citation omitted). Because default judgment is "contrary to the goals of resolving cases on the merits and avoiding harsh or unfair results," a district court must "balance these competing considerations before entering default," id. (citations and internal quotation marks omitted). Such a balancing, which of course "must be handled on a case-by-case basis," Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003), includes:

> the nature of the misconduct, its repetition (or lack thereof), its degree of deliberateness, the extent to which the offender had fair warning of the possible consequences of misconduct, the availability vel non of an opportunity to offer an explanation or to plead for leniency, the legitimacy of any proffered excuse, any other aggravating or mitigating circumstances, the presence or absence of

**CIVIL NO. 12-1247 (SEC)**                                                                 Page 6

>       prejudice to the other party, the degree of interference with the functioning of the
>       court, and the adequacy of lesser sanctions.

Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 38 (1st Cir. 2012) (citing Vallejo v. Santini-Padilla, 607 F.3d 1, 8 (1st Cir.2010)); see also Malot, 478 F.3d at 43 (outlining almost identical factors in the context of dismissal with prejudice for failure to comply with court orders).

Dismissal with prejudice, meanwhile, is no benign sanction either. This is why dismissal for want of prosecution and for failure to comply with court orders is appropriate only when the plaintiff's misconduct has been "extreme." Enlace Mercantil Internacional, Inc. v. Senior Industries, Inc., 848 F.2d 315, 317 (1st Cir.1988). As relevant here, examples of extreme misconduct include defiance of court orders or ignoring warnings, Chamorro, 304 F.3d at 5 (citing Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987)), and the typical aggravating circumstance is a "wasteful expenditure of the court's time," id. (citation omitted); see also, e.g., Young, 330 F.3d at 81 ("[D]isobedience of court orders is inimical to the orderly administration of justice and, in and of itself, can constitute extreme misconduct." (citing Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002))). Dismissal with prejudice may also be warranted "in the face of a clear record of delay or contumacious conduct by the plaintiff." Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971) (citation and internal quotation marks omitted).

**Applicable Law and Analysis**

*I.*

Although the basic principles discussed above spell doom for Aeromed, a procedural matter warrants discussion at the outset: The consequences of Aeromed responding neither to the motions for default judgment nor to the court's last show-cause order why its counterclaim should not be dismissed with prejudice.

**CIVIL NO. 12-1247 (SEC)**                                                                                       **Page 7**

      The short answer is that Aeromed's unexcused failure to respond to the motions for default judgment "authorizes the presiding district judge to summarily grant the unopposed motion, 'at least when the result does not clearly offend equity.'" Rodríguez-Salgado v. Somoza-Colombani, 937 F.Supp.2d 206, 211 (D.P.R.2013) (in the motion-to-dismiss context) (quoting NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 (1st Cir.2002)); see D.P.R. Civ. R. 7(b) ("Unless within . . . 14 days after the service of a motion the opposing party files a written objection to the motion, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection." (emphasis added)).[2] Because, as elucidated below, granting the plaintiffs' unopposed motions for entry of default would not offend equity, they are summarily **GRANTED**.

      The same holds for summarily dismissing the counterclaim for Aeromed's unexcused failure to show cause why its counterclaim should not be dismissed for want of prosecution and for its repeated violations of court orders. See Torres-Alamo v. Puerto Rico, 502 F.3d 20, 25 (1st Cir. 2007); cf. In re Efron, 746 F.3d 30, 32 (1st Cir. 2014) ("The lesson to be derived is that '[t]he law ministers to the vigilant not to those who sleep upon perceptible rights.'" (alterations in original; quoting Puleio v. Vose, 830 F.2d 1197, 1203 (1st Cir.1987))).

      *II.*

      To be sure, the same conclusion would follow on the merits. The material findings and violations just recounted warrant harsh sanctions. And here, as said, the plaintiffs request the entry of a full default judgment — the harshest of sanctions — against Aeromed. After "thoughtful consideration of all the factors involved," Damiani v. Rhode Island Hospital, 704

---

[2] See also Rivera-Quiñones v. U.S. Sec. Associates, No. 12-1598, 2013 WL 5636898, *4 (D.P.R. Oct.16, 2013) (collecting cases construing Local Rule 7(b)); Vallejo v. Santini-Padilla, 607 F.3d 1, 7 (1st Cir. 2010) (discussing waiver on appeal). This mechanism, however, is inapplicable to unopposed motions for summary judgment, see Town of Houlton, 283 F.3d at 7-8; or if it otherwise "conflicts with the Federal Rules of Civil Procedure." Id. at 7.

F.2d 12, 17 (1st Cir. 1983), the Court agrees with the plaintiffs' remedial choice. Five reasons support this determination.

First, the record makes manifest that Aeromed has ignored explicit warnings and persistently flouted a succession of discovery and scheduling orders, see Young, 330 F.3d at 81 (reiterating that disobedience of court orders is inimical to the orderly administration of justice and, in and of itself, can constitute extreme misconduct"), thereby "engag[ing] in a . . . pattern of stonewalling with the aim of frustrating effective discovery and the progress of the case." Companion Health Services, 675 F.3d at 85. And its conduct — for instance, the sheer number of "flagrant disregard of court orders," Alén-Guitiérrez v. Acevedo-Miranda, 66 F. App'x 226, 228 (1st Cir. 2003) — paints a picture of "evasiveness and intransigence," Brockton Savings Bank, 771 F.2d at 12. Moreover, Aeromed's double "failure to achieve the time line that [it] had recommended weighs heavily against [it]." Young, 330 F.3d at 82. These flagrant and comprehensive violations, without more, doom Aeromed. See, e.g., Mulero-Abreu v. Puerto Rico Police Dep't, 675 F.3d 88, 94 (1st Cir. 2012).

Second, milder alternatives have been exhausted, to no avail. As noted, the Court imposed two lesser sanctions on Aeromed: An admonishment and a $500 sanction — precisely for Aeromed's violations of court orders and discovery obligations. Although not obliged to do so, see, e.g., Damiani, 704 F.2d at 15, the Court already "slapped the offender on the wrist." Hooper-Haas, 690 F.3d at 39.

Third, Aeromed continues repeating its earlier misconduct by disregarding every new set of deadlines notwithstanding the Court's warning that "further noncompliance would have dire consequences . . . ." Id. at 38. Aeromed was explicitly warned that further violations of court orders would result in an entry of default judgment, see Remexcel, 583 F.3d at 52 (noting that repeated warnings by district court supported default judgment), and yet Aeromed turned a deaf ear to those warnings. To make matters worse, the plaintiff filed two motions for default

**CIVIL NO. 12-1247 (SEC)**                                                                                                       **Page 9**

judgment, but Aeromed opposed neither the motions in general nor the sanction sought. The foregoing militates in favor of default judgment.³

Fourth, "serious prejudice" has been caused to the plaintiffs. See Hooper-Haas, 690 F.3d at 38 (listing as relevant factor "the presence or absence of prejudice to the other party"). The plaintiffs have been plainly prejudiced by Aeromed's empty promises: They have been unfairly placed in disadvantageous position. That after more than two years of mounting expenses the plaintiffs (and the court) continue to face uncertainty about the outcome of this litigation is, without serious question, unacceptable. Cf. Xiong v. Fresno County Economic Opportunities, 36 Fed.Appx. 630, 631 (9th Cir. 2002) ( "risk of prejudice to the defendants weighed in favor of dismissal because the plaintiffs' action caused the defendants to wait unnecessarily 'in limbo' and to expend further time and money to monitor the action"). Here, in short, the plaintiffs' whole pre-trial preparation has been "stalled" by Aeromed's conduct, Mulero-Abreu, 675 F.3d at 94.

And last — but certainly not least — Aeromed's stonewalling forced the Court to issue multiple show-cause orders; and "other time parameters were pushed back as the court waited in vain," id., for Aeromed to comply with its obligations. Its recalcitrant behavior, furthermore, created unwarranted delays, and a waste of limited time and judicial resources. That is unacceptable.

As to Aeromed's counterclaim, it suffices to say — indeed, it follows naturally — that the cumulative weight of the five reasons just given supports dismissing it with prejudice for want of prosecution, and given Aeromed's repeated noncompliance with court orders. See, e.g.,

---

³E.g., Hooper-Haas, 690 F.3d at 39 ("[T]he appellant was given two pointed warnings and had an opportunity . . . to oppose the appellees' request for the entry of a default."); Brockton Savings Bank, 771 F.2d at 12 (basing affirmance of default sanction in part on district court's "avowed purpose to offer . . . [defendant] the opportunity to explain and justify the lateness of the revelation . . .").

CIVIL NO. 12-1247 (SEC) Page 10

Malloy v. WM Specialty Mortgage LLC, 512 F.3d 23, 26 (1st Cir. 2008) (per curiam). If more were needed, Aeromed's egregious violations of court orders no doubt constitute extreme conduct, see, e.g., Young, 330 F.3d 76 at 82, and its failure to even show cause on this point only reinforces the conclusion that dismissal with prejudice is in order, see Torres-Alamo, 502 F.3d at 25.

The Court, to be sure, is inherently disinclined to impose such harsh sanctions, not least because of the well-recognized policy favoring adjudication on the merits. But that concern is particularly outweighed here by "the judiciary's strong institutional interest in ensuring that litigants honor court orders," Tower Ventures, 296 F.3d at 47, and the Court's ability to manage the case, see, e.g., id. at 46 (noting that "[s]cheduling orders are essential tools . . . and a party's disregard of such orders robs them of their utility"). And "the concept of default" no doubt "encourages the expeditious resolution of litigation and promotes finality." KPS & Associates, Inc. v. Designs By FMC, Inc., 318 F.3d 1, 13 (1st Cir. 2003) (citation omitted).[4]

III.

One last task remains: Is an evidentiary hearing on damages required? See Fed. R. Civ. P. 55(b)(2).[5]

"A hearing may be required . . . when the amount is in dispute or is not ascertainable from the pleadings." In re Home Restaurants, 285 F.3d 111, 114 (1st Cir. 2002); cf. Fed. R. Civ. P.

---

[4] Aeromed's counsel has argued that "he is solely responsible for this matter," and that Aeromed "should not be held accountable." Docket # 75, p. 1. "But in litigation matters, lawyers act for their clients; and this case is not the first (nor will it be the last) in which the failings of an attorney are visited upon h[is] client." Rivera-Velazquez v. Hartford Steam Boiler Inspection & Ins. Co., --- F.3d ----, 2014 WL 1613686, at *4 (1st Cir. Apr. 16, 2014). And even assuming (without deciding) that this constitutes an ameliorative factor, it is outweighed by the other factors already discussed.

[5] This rules authorizes courts to "conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

55(b)(1) ("If the plaintiff's claim is for . . . a sum that can be made certain by computation, the clerk — on the plaintiff's request, with an affidavit showing the amount due — must enter judgment for that amount and costs against a defendant who has . . . defaulted . . . .") If, however, the district court "has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object, the court has the discretion to order a default judgment 'without a hearing of any kind[.]'" In re The Home Restaurants, 285 F.3d at 114 (quoting HMG Property Investors v. Parque Indus. Rio Canas, 847 F.2d 908, 919 (1st Cir.1988)); see also KPS & Associates, 318 F.3d at 21 ("In limited circumstances we have permitted district courts to dispense with a Rule 55(b)(2) hearing, even in the face of apparently unliquidated claims." (citation omitted)).

Here, the Court, bereft of any guidance from the plaintiffs on this essential point, ordered them to "brief the issue whether a hearing on damages is required before entering final judgment disposing of this case." Docket # 87 (citations omitted). The plaintiffs complied and responded that a hearing could be dispensed with, because the requested amounts "are in fact ascertainable from the pleadings." Docket # 89, p. 3. This is so, they maintain, because their complaint "claim[s] and pleaded specific dollar figures which are due and payable under the various contracts . . . that were breached [by Aeromed]." Id. Aeromed never opposed the plaintiffs' request for default judgment without a hearing, thus waiving any objections under Local Rule 7; see D.P.R. Civ. R. 7(b), and note 2 above and accompanying text.

Aeromed's procedural default put aside, the plaintiffs are right that no Rule 55(b)(2) hearing is required here. This is so because the amount claimed by each plaintiff in the complaint — collectively, $548,654.72 — is a sum certain, liquidated amount, for it can be readily calculated based on the contracts at issue in this case. Compare KPS & Associates, 318 F.3d at 19 (noting that sum-certain scenarios "include actions on money judgments, negotiable

**CIVIL NO. 12-1247 (SEC)**                                                                 Page 12

instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof"); with Hutton v. Fisher, 359 F.2d 913, 916 (3d Cir. 1966) (calculation of personal-injury damages necessitates some type of hearing).[6] And the plaintiffs have furnished (at the Court's behest) an affidavit by their Chief Financial Officer, who "represents and warrants" that this figure is "true and correct[.]" Docket # 99-1, ¶ 11. This affidavit, which coincides with the amounts stated in the complaint, also attests to the existence of the contracts that were breached by Aeromed.

On this record, and with Aeromed's acquiescence, no more should be needed to enter a default judgment in the amount stated in the complaint.[7]

**Conclusion**

For the reasons stated, the plaintiffs' motions for default judgment are **GRANTED**, and Aeromed's counterclaim is **DISMISSED** for lack of prosecution and for its serial violations of court orders. A default judgment in favor of the plaintiffs and against Aeromed will therefore be entered in the amount of **$548,654.72**.

**SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of May, 2014.

                 *s/ Salvador E. Casellas*
                 SALVADOR E. CASELLAS
                 U.S. Senior District Judge

---

[6] Specifically, the complaint alleges that Aeromed owes (1) $50,611.11 to Hawke Aerospace; (2) $31,950.00 to Hawke Aircraft; (3) $426, 093.60 to Keystone; and (4) 40,000 to Uniflight. Docket # 1 ¶3.5; see also id. ("This outstanding balance owed by the defendant is liquid, due and payable.").

[7] But cf. KPS & Associates, 318 F.3d at 20-21 (holding that district court abused discretion by entering default judgment in amount stated in complaint without conducting an evidentiary hearing or making further inquiry, where the requested amount contained inconsistences and mathematical errors and was internally inconsistent with supporting documents).